## In re VIRCH.

(First Division. Juneau. June 29, 1916.)

### No. 1477-A.

JURY ⬦29(2)—WAIVER—HABEAS CORPUS.

The plaintiff in this proceeding was arrested for maliciously breaking the fence of another. He waived a trial by jury and was tried by the justice, who found him guilty and imposed the penalty fixed by statute. He then brought habeas corpus to test the legality of his conviction on trial without a jury, notwithstanding his waiver, contending that section 2527, Compiled Laws Alaska 1913, which specially authorized the waiver and summary trial without jury, is in violation of the last clause of section 2, article 3, U. S. Const. *Held*, the offense for which the defendant was found guilty is not a petty misdemeanor,

⬦See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

but a crime of a serious character, and may be punished by imprisonment for a year. The conviction is therefore in conflict with the provision of the Constitution and void. The jury trial in such cases cannot be waived, notwithstanding the act of Congress authorizing it. The applicant is illegally held, the writ is sustained, and the prisoner discharged.

John Rustgard, of Juneau, for petitioner.
James A. Smiser, U. S. Dist. Atty., of Juneau.

JENNINGS, District Judge. This is a hearing on an application for discharge on a writ of habeas corpus. The contentions of the parties have been reduced to but two questions, and those expressed in a simple form. Those two questions are as follows:

(1) May a person charged with a misdemeanor and pleading not guilty waive a trial by jury?

(2) If he may and does, and is convicted by the justice, may he secure his release by writ of habeas corpus?

As to these two questions the positions assumed are: As to question No. 1, the government contends that a defendant so charged and so pleading may waive trial by jury, and it relies on section 2527, Compiled Laws Alaska 1913, which provides as follows:

"Sec. 2527. That upon a plea other than a plea of guilty, if the defendant do not then demand a trial by jury, the justice must proceed to try the issue."

The defendant contends that this section is unconstitutional, in that the last clause of section 2, article 3, of the Constitution provides:

"The trial of all crimes, except in cases of impeachment, shall be by jury," etc.

Now, what did the framers of the Constitution mean when they said all crimes shall be triable by jury? The language of the Constitution must be taken in the light of the meaning attached to such words at the time of the adoption. Callan v. Wilson, 127 U. S. 540, 8 Sup. Ct. 1301, 32 L. Ed. 223; Schick v. U. S., 195 U. S. 65, 24 Sup. Ct. 826, 49 L. Ed. 99, 1 Ann. Cas. 585; Rasmusson v. U. S., 197 U. S. 516, 25 Sup. Ct. 514, 49 L. Ed. 862. Now, at the time of the adoption of the Constitution there were very few offenses not triable by

jury. Magna Charta had provided for a jury trial in all criminal cases; but Parliament—which in England was supreme—had abridged Magna Charta by providing that some offenses need not be so tried. At the time of which we speak all offenses were triable by jury, except those for which Parliament had otherwise provided. Of these latter were the petty misdemeanors spoken of by Blackstone. All other offenses were either felonies or misdemeanors proper, and triable by jury; that is, these other offenses were crimes, and it is to the trial of those that the provision of the Constitution applies.

I have never read that Parliament had, prior to our Revolution, placed the malicious breaking down of a boundary fence in the category of petty misdemeanors. On the contrary, as even at that time the breaking down of a mound of a fish pond whereby any fish shall escape, or the cutting down of a cherry tree in an orchard, were capital offenses, and as to be seen for one month in the company of persons who call themselves, or are called, Egyptians, was a felony without benefit of clergy, it is fair to presume that such an offense as the one first spoken of was at least not "a petty misdemeanor," but that it was a crime proper. Such being the case, it would come within the language of the constitutional provision.

But it is suggested that Congress itself has established a line of demarcation between crimes and petty offenses (so far as the requirement of trial by jury is concerned), by providing that this offense is a misdemeanor, and that in misdemeanors the trial by jury may be waived, and is waived, if not claimed; but this is to beg the whole question. Congress has indeed said just that thing, and if we had no written Constitution—that is, if Congress, like Parliament, was supreme—there would be an end to the discussion; but Congress is not supreme. Behind it and above it is the Constitution, and that Constitution has said when the trial must be by jury, and the courts have construed the provision to be mandatory in such cases as are covered by the provision—that is, crimes as understood at the time of the adoption of the Constitution—and that in such cases the form of trial must be by jury. Such being the case, Congress had no power to authorize the waiver of a jury in a case like this. To admit this conten-

tion would lead to the conclusion that Congress could, by merely calling well-known felonies misdemeanors and prescribing that misdemeanors shall not be tried by jury, entirely abrogate the provision of the Constitution for a jury trial in cases of all crimes. Of course, Congress can make misdemeanors out of what were former felonies; but, having done so, it cannot take the further step of placing them in the category of cases to be tried without a jury, unless at the time of the adoption of the Constitution the prescribed thing —the offense—was of that nature which Parliament had at the time designated as a petty misdemeanor not triable by jury.

In Callan v. Wilson, supra, it was said:

"Except in that class or grade of offenses called petty offenses, which, according to the common law, may be proceeded against summarily in any tribunal legally constituted for that purpose," it secures the right of trial by jury.

That case was one in which the fine was only $75, and in default of payment imprisonment for 30 days. The justice who wrote the opinion in that case says (127 U. S. on page 549, 8 Sup. Ct. on page 1303 [32 L. Ed. 223]):

"The word 'crime,' in its more extended sense, comprehends every violation of public law; in a limited sense, it embraces offenses of a serious or atrocious character. In our opinion, the provision is to be interpreted in the light of the principles which, at common law, determined whether the accused, in a given class of cases, was entitled to be tried by a jury. It is not to be construed as relating only to felonies, or offenses punishable * * * in the penitentiary. It embraces as well some classes of misdemeanors, the punishment of which involves or may involve the deprivation of the liberty of the citizen."

The opinion of the court was unanimous, and the court was an exceptionally able one. There were Justices Samuel F. Miller, Stephen J. Field, Joseph B. Bradley, Stanley Mathews, Horace Gray, Samuel Blatchford, and L. Q. C. Lamar.

Now, the Supreme Court, at a later date (when all the Justices just mentioned, except Justice Harlan, had died), in the Schick Case, 195 U. S. 65, 24 Sup. Ct. 826, 49 L. Ed. 99, 1 Ann. Cas. 585, held that an offense punishable by a mere fine of $50 was a "petty misdemeanor." The court's opinion in that case was to the effect that whether or not the offense is a petty one depends on—

"the nature of the offense and the amount of punishment prescribed rather than its place in the statutes. * * * Clearly both indicate that this particular violation of the statute is only a petty offense."

And on page 67 of 195 U. S., on page 826 of 24 Sup. Ct. (49 L. Ed. 99, 1 Ann. Cas. 585), they say:

"So small a penalty for violating a revenue statute indicates only a petty offense. It is not one necessarily involving any moral delinquency."

This holding is not antagonistic to the language of Judge Harlan, supra, because that language does not deny that an offense, the punishment of which does not involve the liberty of the citizen, is a mere petty offense; nevertheless it drew from the learned jurist aforesaid one of his vigorous, almost indignant, dissenting opinions. In that dissenting opinion he contended that "crimes," as used in the constitutional provision aforesaid, applies to all offenses, however punishable, except to those which Parliament had expressly determinated as petty offenses and denied a trial by jury for. His argument was that Parliament might make exceptions, because it is not bound by a written Constitution, and its authority in matters of legislation is omnipotent, and, speaking of the excerpts from the opinion just quoted, the "great dissenter" says:

"Running through the adjudged cases is the thought that the facts necessary to be proved in order to sustain the charge of crime, where the plea is not guilty, must be ascertained in the mode ordained by law for such purpose. 'When, therefore,' says Blackstone, 'a prisoner on his arraignment pleads not guilty, and for his trial hath put himself on his country, which country the jury are, the sheriff of the county must return a panel of jurors, "liberos et legales homines, de vicineto." ' Bk. 4, c. 27, *350. Now, all will agree that when the crime charged is a felony, a trial in a Circuit or District Court of the United States, even with the consent of the accused, without a jury composed of twelve persons, would be unauthorized and unavailing for any legal purpose. Why? Because, and only because, the law, the supreme law of the land, has declared that the trial of all crimes shall be by jury. And, perhaps, all will agree that the constitutional injunction applies with like force to such misdemeanors as by statute are punishable with imprisonment, and that a Circuit or District Court of the United States is without jurisdiction, under a plea of not gulty, no jury being impaneled, to try any crime against the United States involving life or liberty."

Considering that the opinion in Callan v. Wilson, supra, has not been overruled, I think this court is justified in holding that, if the offense is against the sovereignty and the punishment may be imprisonment, the offense cannot be called a petty one. This offense is against the sovereignty, and it is punishable by a fine of $500, or by imprisonment for one year, and the gist of the offense consists in the "maliciously" breaking the fence, and imports a more or less degree of moral turpitude. Such being the nature of the offense, and the punishment being so severe, in my opinion any idea that a petty offense is charged is precluded.

The Constitution "is controlling upon Congress in legislating for Alaska," and Congress cannot even reduce the number of jurors from twelve to six, because the Constitution (whose language is to be construed in the light of the times and the circumstances when it was passed), in using the word "jury," meant a common-law jury of twelve. Rasmussen v. U. S., supra.

This cause being triable under the Constitution before a jury only, a jury trial cannot be waived. Callan v. Wilson, supra; Lowe v. U. S., 169 Fed. 86, 94 C. C. A. 1; Freeman v. U. S., 227 Fed. 732, 142 C. C. A. 256.

If a jury trial cannot be waived, a trial without a jury is void, the sentence is a nullity, and advantage may be taken by habeas corpus. Callan v. Wilson, supra.

In this case the applicant alleges in his "replication" to the return that he was tried without a jury; the government demurs to the replication; the demurrer was overruled. Whereupon the government "rejoins" to the effect that, although there was no jury empanelled, yet the defendant had waived a jury, and that in accordance with section 2527 of the Compiled Laws no jury trial was required. On this, the applicant moves for judgment of discharge, and in his motion contends that the said section is void, being in contravention of the article and section of the Constitution above quoted, and of the Sixth Amendment; thus the direct constitutional question is before this court and it must decide it. In view of what has been said before, the court is obliged to think that the provision is unconstitutional and that the applicant is illegally held.

The order will be that the writ of habeas corpus is sustained, and the applicant discharged.